WEAD, Admr., Appellant,

v.

LUTZ et al.; GMAC Mortgage Corporation, Appellee.

[Cite as *Wead v. Lutz,* 161 Ohio App.3d 580, 2005-Ohio-2921.]

Court of Appeals of Ohio,
Twelfth District, Fayette County.

No. CA2004–12–022.

Decided June 13, 2005.

John H. Wead, for appellant, estate of Angela M. Lutz.

Carpenter & Lipps, L.L.P., and Angela M. Paul, for appellee, GMAC Mortgage Corporation.

BRESSLER, Judge.

{¶ 1} Plaintiff-appellant, John Wead, as administrator of the estate of Angela Lutz, appeals the decision of the Fayette County Court of Common Pleas, Probate Division, ordering the sale of real estate subject to a finding that defendant-appellee, GMAC Mortgage Corporation ("GMAC"), possessed a valid and secured mortgage on the land. We affirm the trial court's decision.[1]

{¶ 2} On February 11, 2002, Angela Lutz purchased real property in Bloomingburg, Ohio. Lutz signed a note in the amount of $87,516 with Alligriff Mortgage Corporation, Inc. She secured the note by a mortgage upon her property. Also on the same day, Alligriff assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Huntington Mortgage Company ("Huntington"). The mortgage and assignment were recorded in the Fayette County Recorder's Office.

{¶ 3} On June 25, 2002, Lutz died in an automobile accident, leaving two minor children, Zachary and Janee Lutz, as heirs. Her estate was admitted to probate and appellant was appointed as administrator. Michelle Issel, a paralegal for GMAC, testified that GMAC acquired the mortgage as part of a bulk transaction with Huntington in July 2002, but no documents verifying such transaction were offered into the evidence.

{¶ 4} Believing itself to be the holder of Lutz's promissory note, GMAC brought a foreclosure action in the General Division of the Fayette County

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

Common Pleas Court on the property on December 18, 2002, because the mortgage payments were in default dating back to June 2002. Appellant moved to dismiss because GMAC was not a real party in interest. GMAC opposed the motion and cited Civ.R. 17(A) for purposes of remedying the basis of the administrator's objection. However, on July 7, 2003, the trial court found a reasonable time to remedy had passed and dismissed GMAC's foreclosure action because GMAC did not prove that it had received an assignment from Huntington. The court found that GMAC lacked standing and failed to state a claim upon which relief could be granted.

{¶ 5} On July 17, 2003, appellant filed a complaint to sell real estate, the subject action of the current appeal, in the Probate Division of the Fayette County Common Pleas Court. Appellant included MERS as nominee for Huntington among the party defendants. On August 15, 2003, Huntington assigned the mortgage to GMAC, and GMAC soon thereafter recorded the assignment on August 28. On September 10, 2003, appellant amended his complaint and included GMAC as an additional party defendant. GMAC answered the amended complaint on October 22, 2003.[2]

{¶ 6} On November 10, 2003, GMAC brought another foreclosure action in the common pleas court, general division. Once again, the general division of the common pleas court dismissed the action. In its judgment entry of January 28, 2004, the court discussed the concurrent jurisdiction between the foreclosure suit and appellant's pending complaint to sell real estate in the probate court. Because appellant's complaint was filed first, the jurisdiction of the probate court took precedence over the general division's jurisdiction.

{¶ 7} The probate court held a hearing on May 19, 2004 on appellant's complaint to sell real estate and found that appellee possessed a valid and secured mortgage on the property. The court ordered that the property be sold accordingly. Appellant now appeals this decision, raising a sole assignment of error.

{¶ 8} However, before addressing appellant's assignment of error, appellee argues that this court is without jurisdiction in the following matter because the probate court's decision was not a final, appealable order. We disagree.

{¶ 9} R.C. 2505.02(B) provides:

{¶ 10} "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 11} " * * *

---

2. The trial court accepted the answer as timely after the parties' stipulation for extension of time in which to answer and a subsequent dispute irrelevant for the purposes of this appeal.

{¶ 12} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

{¶ 13} The term "special proceeding" is defined as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). Generally, matters related to estate administration are treated as special proceedings. See *In re Estate of Lilley* (Dec. 20, 1999), Warren App. Nos. CA99–07–083, CA99–07–084, CA99–07–087, and CA99–07–088, 1999 WL 1239470, citing *In re Estate of DePugh v. DePugh* (Mar. 31, 1995), Miami App. No. 94CA43, 1995 WL 136996.

{¶ 14} Our inquiry, however, must also determine whether the probate court order affects a substantial right. R.C. 2505.02(A)(1) provides that a "substantial right" is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." In *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 616 N.E.2d 181, the Ohio Supreme Court clarified the standard for determining when a substantial right is affected. The court stated that "[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." Id. at 63, 616 N.E.2d 181. In the case at bar, the probate court found that GMAC has a valid and secured mortgage on the real estate and ordered the property to be sold accordingly. We find that the ensuing obligation imposed upon the estate constitutes a substantial right affected by the court's order.

{¶ 15} Because we find that this court has appropriate jurisdiction over the final, appealable order, as required by R.C. 2505.02, we now turn to appellant's sole assignment of error alleging that the trial court erred when it found GMAC has a valid and secured mortgage on the property to be sold and is a valid creditor with a valid claim in the estate.

{¶ 16} Appellant's first argument challenges the validity of GMAC's mortgage on the basis of the alleged untimely recordation of the mortgage's assignment. However, the issue of when the mortgage assignment was recorded becomes relevant only to the extent of establishing creditor priority and subsequent notice to a bona fide purchaser of the land. The validity of the mortgage itself remains unaffected by the timing of the assignment's recordation.

{¶ 17} The Revised Code specifically provides for the assignment of mortgages by either writing the assignment on the original mortgage, writing the assignment upon the margin of the record of the original mortgage, or by executing a separate instrument of assignment. R.C. 5301.31; 5301.32. The assignment of the mortgage "shall transfer not only the lien of the mortgage but also all interest in the land described in the mortgage." R.C. 5301.31.

{¶ 18} Detailing the recording requirement, R.C. 5301.25 provides the following:

{¶ 19} "All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument."

{¶ 20} Appellant cites *Wagner v. Bank One, Athens, N.A.* (Dec. 20, 1995), Gallia App. No. 95CA7, 1995 WL 761301, and *Pinney v. Merchants' Natl. Bank of Defiance* (1904), 71 Ohio St. 173, 72 N.E. 884, for the proposition that in a foreclosure action, if a mortgage assignee does not provide the proper notice by recording the assignment and thus is not named as a party, the assignee is bound by a foreclosure decree to the same extent as the named party assignor. Appellant's briefs, however, fail to clearly articulate the purpose for which this proposition is offered.

{¶ 21} In *Wagner,* Bank One held a mortgage as successor of Central Trust, but Bank One did not record the assignment. The Wagners, holders of a second mortgage on the subject real estate, brought a foreclosure action and named as defendants those with whom the mortgage had been executed, as well as Central Trust, among others. A summons and copy of the complaint were served upon Central Trust. Central Trust did not file an answer or any other pleading in the matter. A decree for judgment, foreclosure, and sale barred any interest Central Trust had in the real estate. Bank One, formerly known as Central Trust, acknowledged that it had notice of the summons and a copy of the foreclosure complaint and that both should have been forwarded on to and addressed by the appropriate department. However, Bank One's initial appearance, despite such notice, did not occur until it moved to vacate the trial court's judgment. Bank One's motions were denied because the company did not record the assignment from Central Trust and did nothing to correct this. Bank One was barred as assignee of Central Trust because Central Trust had failed to answer Wagner's complaint. See, also, *Pinney,* 71 Ohio St. at 184–185, 72 N.E. 884 (assignee was bound by foreclosure decree to extent of the named party-assignor when the former did not provide proper notice by recording the assignment and was thus not named as a party in the action).

{¶ 22} These cases are distinguishable from the case at bar because they both address the issue of competing creditors and the underlying purpose of the recording statutes, namely to provide notice of the real condition of the land with respect to encumbrances to all interested. Id. at 184, 72 N.E. 884. Here, it was

appellant, the administrator of the original mortgagor's estate, who initiated the action to sell the real estate. He filed an amended complaint and included GMAC as a defendant. Unlike Bank One or Central Trust, GMAC answered the amended complaint, thus making the status of the named party-assignor irrelevant. With respect to GMAC's foreclosure actions, we find *Wagner* and *Pinney* to be procedurally distinguishable. GMAC was the plaintiff who sought foreclosure, thus rendering the purpose of recordation unnecessary. As assignee of the previous mortgagee, GMAC sought to redeem the value of the note and mortgage from the original mortgagor. There is no competing creditor or subsequent bona fide purchaser issue in this scenario.

{¶ 23} R.C. 5301.25 does not invalidate an assignment that has not been recorded. The recording statute deems such an instrument for the encumbrance of land as fraudulent "so far as it relates to a subsequent bona fide purchaser" who, at the time of purchase, has no knowledge of the existence of an encumbrance on the land.

{¶ 24} In *Creager v. Anderson* (App.1934), 16 Ohio Law Abs. 400, 1934 WL 1642, the Third District found that the failure of a mortgage assignee to record his assignment was not fraudulent with respect to creditors that received the conveyance of real property as security for antecedent debts because the parties did not constitute subsequent bona fide purchasers within the meaning of the statute. Regardless of whether they had notice of assignment, the creditors received all they were entitled to receive, which was security of the debtor's property for the antecedent debt. In the present case, there is no statutory basis that suggests appellant should be permitted to improve his legal position on the basis of whether the mortgage assignment was recorded. The recording statute is meant to protect innocent, subsequent bona fide purchasers of land who have no knowledge of any encumbrances. The statute does not release the mortgage obligation of the original mortgagor's estate or her heirs.

{¶ 25} Appellant further argues that a judicial lien cannot be created after the debtor's death because the estate assets and debts are fixed at the time of her death. Consequently, no creditor would be able to improve its priority position by filing a certificate of judgment after the debtor's death. However, appellant inaccurately describes the trial court's finding as creating a judicial lien. Instead, the trial court found that GMAC held the mortgage originally agreed to between Lutz and Alligriff by way of Alligriff's assignment to MERS, as nominee for Huntington, and Huntington's assignment to GMAC.

{¶ 26} In essence, appellant seeks to avoid the mortgage obligation of the estate, but long-standing precedent prevents the heirs from inheriting a greater interest in the estate property than what the decedent possessed during her lifetime. The Ohio Supreme Court has stated that the "heir takes the land

subject to the payment of the ancestor's debts." *Gill v. Pinney's Admr.* (1861), 12 Ohio St. 38, 46, 1861 WL 3. Furthermore, the mortgage itself provides that the "covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower." The trial court did not create an improper judicial lien after Lutz's death. Instead, the court found that GMAC was the assignee of the original mortgage, a debt entered into by Lutz that subsequently passed to her estate.

{¶ 27} Appellant's final argument contends that under the doctrine of res judicata, encompassing both claim and issue preclusion, the dismissal of GMAC's two previous foreclosure actions on the property precludes GMAC from asserting an interest in the case at bar. We disagree. Under claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226. Issue preclusion, also known as collateral estoppel, bars the relitigation in a second action of an issue that has been "actually and necessarily litigated and determined in a prior action." *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, citing *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 195, 2 OBR 732, 443 N.E.2d 978.

{¶ 28} In *Grava*, the Supreme Court expressed its adherence to the modern application of res judicata as stated in Sections 24 and 25 of the Restatement of the Law 2d, Judgments (1982). The court stated:

{¶ 29} "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Grava*, 73 Ohio St.3d at 382, 653 N.E.2d 226, citing 1 Restatement of Judgments (1982) 196, Section 24(1).

{¶ 30} The Restatement of Judgments defines "transaction" as a "common nucleus of operative facts." 1 Restatement of Judgments, at 198–199, Comment *b* to Section 24. Section 25 of the Restatement of Judgments continues:

{¶ 31} "The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action."

{¶ 32} As the Supreme Court noted in *Grava*, "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were

*or might have been* litigated in a first lawsuit." (Emphasis sic.) *Grava* at 382, 653 N.E.2d 226, citing *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178.

{¶ 33} We first find that the dismissal of appellant's second foreclosure action is not a final judgment rendered upon the merits. The general division of the common pleas court noted appellant's pending complaint in the probate division to sell real estate, the same subject property of GMAC's second foreclosure action. On the basis of *Peoples Sav. Assn. v. Sanford* (1938), 59 Ohio App. 294, 13 O.O. 86, 18 N.E.2d 126, the general division of the court explained that the party first filing determines which court will take precedence over the concurrent jurisdiction concerning the subject property. Appellant filed his amended complaint on September 10, 2003, two months before GMAC filed its second foreclosure suit. The general division court recognized that the probate court took jurisdiction first and dismissed GMAC's second foreclosure action. Therefore, the decision does not constitute a final judgment upon the merits.

{¶ 34} With respect to the first foreclosure action, appellant argues that because GMAC's foreclosure action was dismissed because it failed to state a claim for which relief could be granted, the dismissal constitutes a final judgment that should extinguish any right GMAC would have with respect to any claim of having a valid and secured lien on the property. However, that argument disregards the dispositive issue that GMAC's claim to the lien does not arise from the transaction that was the subject matter of a previous action.

{¶ 35} Even though appellee's foreclosure action and appellant's complaint to sell real estate share similar facts (indeed the mortgage Lutz signed on February 11, 2002 was at issue in both actions), that does not necessarily lead to the conclusion that the actions arise from a common nucleus of operative facts. With respect to the foreclosure action, the trial court found that GMAC was not the real party in interest. The trial court's entry, dated July 7, 2003, stated that GMAC had no standing and "fail[ed] to state a claim upon which relief can be granted." Following this decision, Huntington assigned the mortgage to GMAC on August 15, 2003, and GMAC recorded the assignment shortly thereafter. Appellant's amended complaint was filed on September 10, 2003. Between the July 7 dismissal and the September 10 filing, GMAC significantly altered the nucleus of operative facts by becoming a real party in interest. Despite the testimony of Issel claiming that GMAC acquired the mortgage as part of a bulk transaction with Huntington in July 2002, the probate court relied on the August 15, 2003 assignment and August 28, 2003 recordation of the assignment as the bases for its ruling. GMAC received all the rights to which it was entitled pursuant the assignment that it did not possess when the original foreclosure action was dismissed.

{¶ 36} Accordingly, GMAC should not be barred by res judicata on the basis of this earlier decision. Appellee was not attempting to advance an alternative legal theory that might have been raised nor seeking some form of relief not demanded in the first action. In fact, the trial court dismissed the foreclosure action because GMAC was not entitled to relief at all. GMAC lacked standing as a real party in interest. In appellant's subsequent amended complaint to sell real estate, GMAC appeared under changed circumstances.

{¶ 37} Furthermore, issue preclusion should not act as a bar to GMAC's claim in the present case. Chronologically, the issue of whether GMAC held a valid and secured lien after Huntington assigned the mortgage could not be litigated in the first foreclosure action because the assignment had not yet occurred. In the second foreclosure action, the trial court dismissed GMAC's action because of the pending complaint in the probate court. Again, the issue of GMAC's lien was not "actually and necessarily litigated and determined" in the foreclosure action. *Krahn*, 43 Ohio St.3d at 107, 538 N.E.2d 1058. Thus the trial court did not err when it found res judicata and collateral estoppel to be inapplicable in the present case. Appellant's sole assignment of error is overruled.

{¶ 38} The judgment is affirmed.

Judgment affirmed.

POWELL, P.J., and WALSH, J., concur.